FILED
AUG 11 1999
LARRY W. PROPES, CLERK
CHARLESTON, SC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Souri A. Maranto, Plaintiff, v. State Farm Mutual Automobile Insurance Co., Defendant. | ) | C.A. No. 2:98-3131-23 **ORDER** |

Currently before the court are defendant's motion for summary judgment and motion to stay the case. Because the relevant issues have been briefed sufficiently by the parties, the court issues the following ruling without a hearing pursuant to Local Civil Rule 7.08 (D.S.C. 1999).

## I. BACKGROUND

This case arises out of plaintiff's claim that defendant committed a breach of contract, bad faith, and negligence in refusing to pay underinsured motorist (UIM) benefits to plaintiff under an automobile insurance policy issued by defendant to plaintiff.

On September 11, 1996, plaintiff was injured when he was involved in an automobile collision with another car driven by a man named Philip LaCroix. Plaintiff subsequently entered into a covenant not to execute with LaCroix, by which LaCroix's insurance carrier (Nationwide Mutual Insurance Company) paid its liability limits of $25,000 to plaintiff. Plaintiff then initiated a lawsuit against LaCroix in the Court of Common Please for the Ninth Judicial Circuit in Charleston County on August 24, 1998. That lawsuit is still



pending.

At the time of the accident, plaintiff was insured under three policies issued by defendant, which provided a combined limit of $150,000 in UIM coverage. Plaintiff lodged a claim for UIM benefits with defendant, and forwarded supporting documentation to defendant which included medical and vocational records and reports. Defendant denied plaintiff's claims in full. Subsequently, plaintiff filed her lawsuit against Philip LaCroix, and again lodged a claim for UIM benefits, which defendant also denied. This action followed.

Plaintiff instituted this action on October 23, 1998, by filing a complaint which alleged three causes of action: negligence, bad faith refusal to pay benefits, and breach of contract. Defendant has moved for summary judgment on all of plaintiff's claims, and also has moved for a stay of the proceedings in this action. Those motions are now before the court.

## II. SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-124 (4th Cir. 1990). "[W]here the record taken as



a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trail." Celotex, 477 U.S. at 322. The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" Hughes v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting Pachaly v. City of Lynchburg, 897 F.2d 723, 725 (4th Cir. 1990)), cert. denied, 116 S. Ct. 190 (1995). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327.

## III. ANALYSIS

Defendant has moved for summary judgment on all three of plaintiff's claims, which will be addressed in turn.

### A. Negligence

The crux of plaintiff's claim in this case is that defendant's refusal to pay UIM benefits under its contract of insurance with plaintiff breached the contract and constituted bad faith. Plaintiff also has alleged that defendant was negligent in investigating and adjusting plaintiff's claim, and in failing to make a reasonable offer to settle the claim. Complaint, § 22. However, such allegations are more appropriately considered in the context of a claim for bad faith. A jury is entitled to consider issues of an insurance company's



negligence in determining whether the company acted unreasonably in refusing to pay benefits. Nichols v. State Farm Mutual Auto Ins. Co., 306 S.E.2d 616, 620 (S.C. 1983). However, no authority has been cited to the court which would support the existence of a separate, free-standing claim of negligence in such circumstances, nor is the court aware of any. Thus, defendant's motion will be granted with respect to plaintiff's negligence claim.

**B. Breach of Contract and Bad Faith**

Defendant argues that it is entitled to summary judgment on plaintiff's claims for breach of contract and bad faith because plaintiff has not yet obtained a verdict or judgment against Philip LaCroix. Because no such verdict or judgment has been obtained, defendant argues that its contractual obligation to pay UIM benefits has not yet arisen, and it therefore cannot be said to have acted in bad faith in refusing to pay such benefits. The issue of whether a plaintiff may maintain an action for breach of contract or bad faith against a UIM insurance carrier before receiving a verdict against the at-fault driver implicates the UIM coverage statute, S.C. Code Ann. § 38-77-160 (Law. Co-op. 1989 and 1998 Supp.), which reads as follows, in pertinent part:

> No action may be brought under the underinsured motorist provision unless copies of the pleadings in the action establishing liability are served in the manner provided by law upon the insurer writing the underinsured motorist provision. The insurer has the right to appear and defend in the name of the underinsured motorist in any action which may affect its liability and has thirty days after service of process on it in which to appear. . . . In the event the automobile insurance insurer for the putative at-fault insured chooses to settle in part the claims against its insured by payment of its applicable liability limits on behalf of its insured, the underinsured motorist insurer may assume control of the defense of action for its own benefit.

Clearly, the statute requires that, as a prerequisite to suing a UIM carrier for unpaid



benefits, a plaintiff must at least bring an action against the putative at-fault driver and serve copies of the pleadings in that action on the insurer. The issue becomes somewhat clouded, however, when considering the question of whether the action against the at-fault driver must be reduced to a verdict or judgment before a suit against the UIM insurer may proceed. By its own terms, the statute does not appear to require this to occur. However, certain judicial decisions interpreting the statute are relevant to the resolution of this issue.

Defendant relies heavily on the case of Williams v. Selective Ins. Co. of the Southeast, 446 S.E.2d 402 (S.C. 1994). In Williams, the court was presented with a case somewhat similar to this one, in that the plaintiff had settled with the at-fault driver's liability insurance carrier for its policy limits of $25,000 in exchange for a covenant not to execute, and then pursued an action for UIM benefits against her insurer, which refused to pay. Unlike this case, however, the plaintiff in Williams never initiated an action against the at-fault driver to establish liability and damages. Moreover, the statute of limitations for such an action had run, making it impossible for the plaintiff to ever initiate such an action (and thus, to comply with the service requirement of § 38-77-160). Id. at 404. Based on those facts, the court concluded that the plaintiff's claims for breach of contract and bad faith must be dismissed. Id.

On its face, Williams does nothing more than adhere to the plain language of the statute. That is, Williams merely held that, because the plaintiff had not initiated an action against the at-fault driver and served the insurer with copies of the pleadings in that action, (nor would she ever be able to), her claims against the insurer could not proceed. It did not hold, or even suggest, that an action against an at-fault driver must proceed to a verdict or



judgment before a claim may be brought against an insurer. That issue was addressed, however, in Myers v. State Farm Mut. Auto Ins. Co., 950 F. Supp. 148 (D.S.C. 1997). The Myers case also involved a situation somewhat similar to the case at bar, in that the plaintiff had been injured in a car accident and settled with the at-fault driver's liability carrier for its policy limits of $25,000. Myers is somewhat different, however, in that it only involved a claim for bad faith, and not a claim for breach of contract as well. It was also the case in Myers that, unlike Williams, the plaintiff had served the defendant with copies of the pleadings in the underlying tort actions against the at-fault driver. Id. at 149.

Myers ultimately held that a plaintiff need not wait for the underlying tort actions against the at-fault driver to proceed to a verdict or final judgment before pursuing a bad faith action against one's UIM carrier. The court distinguished the case of Lawson v. Porter, 180 S.E.2d 643 (S.C. 1971), in which the South Carolina Supreme Court held that, before the plaintiff could recover uninsured motorist (UM) benefits in an action based on the insurance contract itself, he must obtain a judgment establishing the legal liability of the at-fault driver. Id. at 644. Myers distinguished that decision, however, on the grounds that an action for bad faith does not arise from the contract, but instead arises in tort. Myers, 950 F. Supp. at 150. That is, because the plaintiff had based her claim on allegations that the defendant "acted in bad faith by refusing to make a settlement offer for [UIM] benefits where both accidents were clear cases of liability on [the at-fault drivers' parts], and where very serious injuries were suffered by the insured," it was unnecessary to wait for the underlying tort actions against the at-fault drivers to reach a final judgment before proceeding with a bad faith claim against her UIM carrier. Id. In this case, plaintiff has based his bad faith claim



on similar allegations.

Following Williams, Myers, and Lawson, it appears that plaintiff's bad faith claim would be able to proceed, although his breach of contract claim would not. To be sure, however, defendant has argued that plaintiff's bad faith claim is defective for another reason. Defendant notes that, in order to survive summary judgment in a professional negligence case, a plaintiff generally must offer expert testimony to establish both the professional standard of care and the defendant's deviation from that standard. Gilliland v. Elmwood Properties, Inc., 391 S.E.2d 577, 580 (S.C. 1990); City of York v. Turner-Murphy Co., Inc., 452 S.E.2d 615, 616-17 (S.C. Ct. App. 1994). Such testimony is required unless the subject matter of the case is within the common knowledge and experience of laymen. Id. Defendant argues that the issue of whether an insurance company should pay UIM benefits under the facts of this case is not within the common knowledge of laymen, and that plaintiff's claim therefore must be dismissed because no expert has been named to testify as to this issue (nor can one be named, because the court's deadline for naming expert witnesses has passed).[1]

The general proposition referenced by defendant represents a correct statement of the law -- when the subject matter of a case is not within the common knowledge and experience

[1] Plaintiff apparently had intended to retain an expert, and stated an expectation to name an expert "in the field of adjustment and payment of [UIM] insurance claims" in her answers to the court's interrogatories under Local Civil Rule 26.03. However, the deadline for naming expert witnesses has now come and gone without plaintiff identifying any experts in this field. This fact in and of itself is not dispositive of the issue, however -- the relevant issue is whether plaintiff's claim is of a type for which expert testimony would be required, regardless of whether plaintiff ever expressed an intent to retain an expert.



of laymen, expert testimony generally is required. Hoeffner v. The Citadel, 429 S.E.2d 190, 192 (S.C. 1993); Pederson v. Gould, 341 S.E.2d 633, 634 (S.C. 1986). This standard generally has been applied in cases where plaintiffs allege some sort of professional malpractice, and many (if not most) of these cases appear to deal with two professions in particular -- the medical profession and the building design and construction profession. See, e.g., Hoeffner, 429 S.E.2d at 192 (medical negligence); Gilliland, 391 S.E.2d at 580 (architect malpractice); Pederson, 341 S.E.2d at 634 (medical malpractice); Walker v. The Bluffs Apartments, 477 S.E.2d 472, 473-74 (S.C. Ct. App. 1996) (architect malpractice); City of York, 452 S.E.2d at 616-17 (malpractice claim against an engineering firm that had designed and supervised construction of a waste water treatment facility). See also Mali v. Odom, 367 S.E.2d 166, 168 (S.C. Ct. App. 1988) (attorney malpractice); Kemmerlin v. Wingate, 261 S.E.2d 50, 51 (S.C. 1979) (accountant). However, defendant has not cited to (and the court's independent research has not revealed) any cases in which this standard was applied in the context of a bad faith claim against an insurance company.

Indeed, it appears that the courts of this state routinely decide the issue of whether a jury question exists on a claim of bad faith without any particular reference to the need for expert testimony. See Varnadore v. Nationwide Mut. Ins. Co., 345 S.E.2d 711, 713-14 (S.C. 1986); Nichols, 306 S.E.2d at 619-20; Hansel v. National States Ins. Co., 437 S.E.2d 159, 161 (S.C. Ct. App. 1993). In Hansel, the court provided an extensive list of the evidence which supported the jury's finding that the defendant had committed bad faith by unreasonably refusing to pay a claim for benefits under a nursing home care policy, and the list did not indicate that the plaintiff had presented expert testimony of any kind. Id. at 161



n.2. In this case, plaintiff similarly has claimed that defendant committed bad faith by unreasonably failing or refusing to investigate, adjust, and pay his claim. There is no authority in this state which suggests or indicates that such matters generally are not within the comprehensive capacity of laymen -- indeed, it has been held that the standard by which an insurance company's conduct should be judged is that of "a reasonable and prudent man seeking to determine the facts of the controversy which it was his duty, in good faith, to investigate." Trimper v. Nationwide Ins. Co., 540 F. Supp. 1188, 1194 (D.S.C. 1982) (quoting Koch v. Prudential Ins. Co., 470 P.2d 756, 760 (1970)).

**C. Defendant's Motion to Stay**

As discussed supra, the court appears to be presented with a situation in which one claim (bad faith) is able to proceed, while another (breach of contract) is not. The court could dismiss the breach of contract claim and proceed with the bad faith claim -- however, such a course of action would run the risk of necessitating multiple trials to resolve claims which involve essentially the same issues. As plaintiff has acknowledged, the interests of judicial economy would be served best by having the parties proceed to trial on both claims at the same time. See Nichols, 306 S.E.2d at 619-20. Therefore, the court will stay this litigation until such time as the underlying tort suit against Philip LaCroix has been resolved.



**IV. CONCLUSION**

It is therefore,

**ORDERED,** for the foregoing reasons, that:

(1) Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.** Specifically, defendant's motion is **GRANTED** as to plaintiff's cause of action for negligence, and **DENIED** as to plaintiff's claims for breach of contract and bad faith.

(2) Defendant's motion to stay the case is **GRANTED** until such time as the underlying tort suit against Philip LaCroix has been resolved.

**AND IT IS SO ORDERED.**

**Patrick Michael Duffy**
**United States District Judge**

Charleston, South Carolina
August 11th, 1999

10